IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GREEN PLAINS TRADE GROUP LLC, )
GREEN PLAINS INC., )
GREEN PLAINS WOOD RIVER LLC, )
GREEN PLAINS ORD LLC, )
GREEN PLAINS ATKINSON LLC, )
GREEN PLAINS CENTRAL CITY LLC, )
GREEN PLAINS YORK LLC, )
GREEN PLAINS SHENANDOAH LLC, )
GREEN PLAINS OTTER TAIL LLC, )
GREEN PLAINS FAIRMONT LLC, )
GREEN PLAINS HEREFORD LLC, ) Case No. 8:20-cv-00279-LSC-MDN
GREEN PLAINS MOUNT VERNON LLC, )
GREEN PLAINS MADISON LLC, ) Hon. Joseph F. Bataillon
GREEN PLAINS HOPEWELL LLC, )
GREEN PLAINS SUPERIOR LLC, ) Magistrate Judge Hon. Michael D. Nelson
GREEN PLAINS OBION LLC, )
GREEN PLAINS BLUFFTON LLC, ) ORAL ARGUMENT REQUESTED
individually and on behalf of all others )
similarly situated, )
 )
   Plaintiffs )
 )
 v. )
 )
ARCHER DANIELS MIDLAND )
COMPANY, )
 )
   Defendant. )

**ADM's REPLY IN SUPPORT**
**OF ITS MOTION TO TRANSFER VENUE**

## INTRODUCTION

Plaintiffs closed their Opposition to ADM's motion to transfer by saying, "it is in the Plaintiffs' interest … to not waste resources reinventing the wheel." (Opp. at 8.) That is exactly right. ADM proposes to have this case transferred to the Central District of Illinois, where two other cases based on the very same events are already pending before the same judge, and to have that court consolidate all three cases for discovery. Plaintiffs then could take advantage of the discovery already taken, such as the roughly 2 million pages of documents already produced, and share with other plaintiffs—one of whose complaint they copied—the cost and work of trying to substantiate their claims. There is no need for two different courts to rule repetitively and potentially inconsistently on legal issues and discovery disputes. Not wasting resources reinventing the wheel is the strongest practical argument for transferring this case.

But Plaintiffs are bent on avoiding a transfer, which leads them to repeatedly misrepresent the extent of the differences between the three cases. For example, the very first page of the Opposition asserts that, among the three cases, Plaintiffs here are "the only plaintiffs[] to allege that [ADM's] market manipulation adversely impacted their sales of physical ethanol." That will come as a terrible surprise to MRE, the plaintiff in one of the two Illinois cases, which alleges as its only injury that it "incurred losses by receiving less money for the ethanol it sold." MRE seeks to represent a class whose members all lost money selling physical ethanol. In other words, Plaintiffs here are members of the MRE proposed class. Plaintiffs cannot avoid a transfer by misrepresenting facts about the other cases.

While that is not their only misrepresentation, Plaintiffs more often simply ignore the reasons ADM gave in favor of transfer. ADM argued, for example, that Plaintiffs' choice of forum does not deserve deference, because this is a class action case and some other class

member could easily have filed it in another state. Nebraska has little or no connection to this dispute. ADM's argument has a long lineage, stretching back to a decision of the Supreme Court not long after the Second World War. But there is no mention of it at all in the Opposition, which instead blithely asserts that Plaintiffs' choice of forum should for some unexplained reason receive "great deference." That is not true under the law governing this case.

ADM has established that the interests of justice, convenience of parties and witnesses, and first-to-file rule all favor transfer. For these reasons and those stated in the motion and below, ADM respectfully urges this Court to transfer this case to the Central District of Illinois.

## **ARGUMENT**

### I.     **This case should be transferred under 28 U.S.C. § 1404(a).**

#### A.     **Plaintiffs could have sued in the Central District of Illinois.**

Plaintiffs do not dispute that they could have filed this case in the Central District of Illinois. That prerequisite of section 1404(a) has been met.

#### B.     **This Court should not defer to Plaintiffs' choice of forum.**

The Opposition is consumed with repeating that Plaintiffs' offices are in Nebraska, so the case should stay here. ADM's motion anticipated that argument, explaining that when analyzing whether to transfer *a class action case*, a plaintiff's choice of forum receives little or no weight. Any class member could have been the one to file the case, anywhere in the country, which shows that Nebraska has, at best, a "considerably weakened" connection to this dispute. *Koster v. Am. Lumbermens Mut. Cas.*, 330 U.S. 518, 524 (1947).

To this, Plaintiffs respond with—nothing. They do not even mention the issue, much less address *Koster* or any other authority ADM cited. Instead, the Opposition recites that a plaintiff's choice of forum receives "great deference." (Opp. at 3.) None of the cases it cites for that assertion are class action cases; none involved related cases pending in another district; and none

2

say anything at all to justify keeping this case apart from the others in the Central District of Illinois. Where, as here, "the facts giving rise to the case have little material connection" to plaintiffs' chosen forum, that choice should receive little weight or none at all. *In re Nematron Sec. Litig.,* 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998); *see also Genocide Victims of Krajina v. L-3 Servs.*, 804 F. Supp. 2d 814, 823 (N.D. Ill. 2011).

     **C.**    **The interests of justice favor transfer.**

Plaintiffs' entire discussion of the interests of justice—which is "an important factor because [it] may be decisive in ruling on a transfer motion even [if] the convenience of the parties and witnesses point in a different direction," *Kelly v. Francisco*, 2006 WL 436051, at *4 (D. Neb.)—occupies just six sentences of the Opposition. Worse, it is based on incorrect assertions about the other ADM cases.

The first incorrect assertion is that "[t]he plaintiff classes here are entirely distinct; the Central District of Illinois cases have been brought on behalf of ethanol [derivatives] traders, while this case is brought on behalf of physical ethanol sellers." (Opp. at 4.) This repeats a falsehood from the very beginning of the Opposition: "Plaintiffs are the first plaintiffs in any case—and, so far, the only plaintiffs—to allege that [ADM's] market manipulation adversely impacted their sales of physical ethanol." (Opp. at 1.)

Plaintiffs are wrong. MRE alleges that it "incurred losses by receiving less money for the ethanol it sold." (Dkt. 60-4, Ex. C, MRE Compl. ¶ 20(d).) MRE is an ethanol producer, and its ***only*** alleged injuries are from selling physical ethanol, not from trading ethanol derivatives. ***All*** members of the class that MRE seeks to represent are likewise physical ethanol sellers. (*Id.* ¶ 85.) MRE alleges that it and the class members "received less for their ethanol than they would have received in the absence of ADM's unlawful conduct." (*Id.* ¶ 14.) Selling physical ethanol is

3

a critical point of similarity—not difference—between the cases' class definitions. *Byerson v. Equifax Info. Servs.,* 467 F. Supp. 2d 627, 636–37 (E.D. Va. 2006) (consolidating related class actions is more important than choice of forum or convenience of parties and witnesses).

The second and related incorrect assertion is that "much of the evidence in this case will focus on the physical ethanol market, which is not a factor in the other cases." (Opp. at 4.) *MRE* is entirely about the physical ethanol market. And that's not all. The *AOT* case also depends on the foundational allegation that ADM engaged in a "downward manipulation of physical ethanol prices." (Dkt. 60-2, Ex. A, AOT Compl. ¶ 4.) AOT alleges that only through "aggressively priced daily trades of physical ethanol" did ADM supposedly cause AOT's losses in the ethanol derivatives market. (*Id.* ¶ 51.) And like ADM, Plaintiffs, and MRE, AOT also "traded physical ethanol." (*Id.* ¶ 63.) In fact, ADM's affirmative defenses in that case are based in part on AOT's trades in physical ethanol. (Ex. E, ADM Ans., Aff. Defs. ¶¶ 5-6, 8.) Where Plaintiffs got the strange and incorrect idea that the physical ethanol market is not a factor in the *MRE* and *AOT* cases, the Opposition does not reveal. That market is at the center of all three cases.

The only other thing the Opposition says about the interests of justice—that this case involves a claim for interference with contract—is irrelevant. Plaintiffs cite no case, and ADM is aware of none, in which the presence of one additional cause of action (which ADM has already moved to dismiss) is held to outweigh the great benefits to judicial economy and consistency that come from transferring related cases to one court. As this Court has held, "[a]llowing two cases that involve the same issues to simultaneously proceed in different courts would lead to a waste of time, energy, money and judicial resources." *BuilderTrend Sols., v. VBConversions,* 2017 WL 6017507, at *8 (D. Neb.) (Bataillon, J.); *see also Consol. Infrastructure Grp. v. USIC,* 2017 WL 2222917, at *8 (D. Neb.) (Bataillon, J.) (same); *Bendfeldt v. Window World,* 2017 WL 2772351,

4

at *4-5 (D. Neb.) (Bataillon, J.) (same). This case can be added to the long list of this Court's decisions where that central principle should govern transfer.

Aside from their false and irrelevant assertions about supposed differences between this case and the other two, Plaintiffs make no argument at all about judicial economy and consistency. They do not even try to deny the benefits that would come from having one judge rather than two manage identical discovery and decide legal issues consistently for a group of cases that are based on the exact same events. *E.g.*, *APA Excelsior III v. Premiere Techs.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) ("It is well established that the existence of related action pending in the transferee court weighs heavily towards transfer.").

To maximize those benefits, ADM has filed a Rule 42(a) motion in the Central District of Illinois to consolidate the cases for discovery—all three cases if this Court grants transfer, or the two already pending there if not. *In re Nine Mile,* 692 F.2d 56, 61 (8th Cir. 1982) (if two cases "share[] enough legal and factual issues … that the consolidation of the two cases under Fed. R. Civ. P. 42(a) is a possibility," transfer is favored), *overruled on other grounds, Mo. Hous. Dev. Comm'n v. Brice,* 919 F.2d 1306, 1310–11 (8th Cir. 1990). For this Court's convenience, a copy of ADM's motion is attached to this reply as Exhibit F.

### D.   The convenience of the parties and witnesses favors transfer.

ADM's motion explained that the Central District of Illinois is more convenient, because it is the location of evidence and witnesses who can testify about the heart of this case—ADM's ethanol sales—and it is far closer than this Court to the Argo Terminal in Illinois, where the complaint alleges the key sales took place. Plaintiffs also produce ethanol in Illinois. In addition, the convenience of Illinois is multiplied by the presence there of the other two cases, because it is more convenient and efficient for all parties to litigate in one court rather than two. Without a

5

transfer, repetitive litigation in multiple courts would be a certainty, not least because ADM is going to take third-party discovery in *each case* from the plaintiffs in the *other two cases*, due to the overlap of their allegations, proposed classes, and participation in the ethanol market.

Rather than address any of those points, Plaintiffs argue that transferring this case would only shift inconvenience from ADM to Plaintiffs. (Opp. at 5.) But the case they cite for that argument does not help them. In *Terra Int'l v. Mississippi Chem.*, 119 F.3d 688, 696-97 (8th Cir. 1997), the Eighth Circuit *upheld* a transfer even though convenience seemed to favor the district where the case was filed. Moreover, Plaintiffs have not shown that a transfer would merely shift the inconvenience. The Opposition does not identify even a single witness in Nebraska. But it does identify the same two ADM witnesses and other "senior ADM officials" who are discussed in AOT's complaint—all located in Illinois.

Plaintiffs' only other argument is that they "suffered—and continue to suffer—damages in Nebraska." (Opp. at 5.) That adds nothing to their oft-repeated argument that their offices are in Nebraska. The "location" of an intangible suffering of damages, if that is even a meaningful concept, has nothing to do with the convenience of parties and witnesses. Under section 1404(a), this Court should transfer this case to the Central District of Illinois.

## II.     The first-to-file rule also supports transfer.

ADM's motion explains that when two cases are substantially similar, the first-to-file rule favors transferring the second unless there are "compelling circumstances." The Opposition (at 7) twice promises to reveal "compelling circumstances," but by the end it presents none.[1]

---

[1] The Opposition takes another wrong turn when it states that "[t]he Eighth Circuit has also noted that this [first-to-file] principle 'should not be applied in a rigid, mechanical, or inflexible manner.' *Smart v. Sunshine Potato Flakes*, 307 F.3d 684, 687 (8th Cir. 2002)." (Opp. at 6.) *Smart* contains neither that quote nor sentiment. *Smart* simply reaches the self-evident conclusion that the first-to-file rule cannot favor a lawsuit that was filed *second*.

Instead, the Opposition makes ordinary arguments that cases are not identical. But being identical is not the test. "[T]he crucial inquiry is one of 'substantial overlap' between the parties and issues being litigated." *Nat'l Indem. v. Transatlantic Reins.*, 13 F. Supp. 3d 992, 998 (D. Neb. 2014). Plaintiffs' arguments look past the cases' substantial overlap.

### A.   The proposed classes overlap.

The membership of each proposed class overlaps to a significant degree. In the present case, the class members are sellers of physical ethanol. (Compl. ¶ 156.) The *MRE* class members are a subset of those same sellers—the ones that are also ethanol producers. (*MRE* Compl. ¶ 85.) The *AOT* class members are traders in ethanol derivatives such as futures. (*AOT* Compl. ¶ 119.) As Plaintiffs admit, ethanol producers and sellers typically also trade ethanol derivatives (Compl. ¶¶ 56, 109), so most *Green Plains* and *MRE* class members are also *AOT* class members. Thus, many companies are members of two or even—like Plaintiffs—all three proposed classes. And *every* member of *every* proposed class is alleged to have a claim that depends on whether ADM artificially depressed physical ethanol prices. (Compl. ¶ 161; *AOT* Compl. ¶ 124; *MRE* Compl. ¶ 87.) As ADM's motion (at 12) explains, courts focus on broad similarities in issues, not on narrow differences in class definitions, when deciding whether to transfer.

### B.   The similar claims and alleged injuries arise from the same events.

Plaintiffs overstate the differences in the cases' claims and alleged injuries. Plaintiffs and AOT both allege violations of the Commodity Exchange Act based on the same conduct and events: ADM supposedly manipulating the price of ethanol by selling too much too cheaply at the Argo Terminal beginning in November 2017. (In fact, Plaintiffs copied AOT's claim verbatim. (Mot. at 3.)) MRE's claim, based on those very same events, is for violations of the Sherman Act that resulted in sellers receiving less for their ethanol—the same injury Plaintiffs

7

allege. And MRE also, like Plaintiffs and AOT, asserts that ADM violated the Commodity

Exchange Act. (*MRE* Compl. ¶¶ 12-13.) These overlaps in claims and alleged injuries make the

cases substantially similar, so the first-to-file rule favors transfer.

The Opposition concludes by arguing that copying a complaint is not sanctionable under

Rule 11—an accusation ADM's motion never made. The relevance of complaint copying—over

100 paragraphs in Plaintiffs' complaint originated in the *AOT* complaint—is that it shows

beyond peradventure that the cases are substantially similar, favoring transfer. Against that

accusation, Plaintiffs have no answer.

## C.   Litigating the same events in two courts is an undue burden.

Plaintiffs argue that ADM has never asserted it would be an undue burden to litigate this

case in Nebraska but *AOT* and *MRE* in Illinois. The only true part of that sentence is that ADM's

motion did not use the exact phrase "undue burden." But the entire motion is about the needless

and prejudicial encumbrance that would result from having to litigate identical events, on which

substantially similar proposed classes are basing substantially similar claims, in two different

courts simultaneously. Not only did the motion argue that "it would be extraordinarily

inconvenient to require the parties and witnesses to participate in parallel litigation in this Court

and in" a different court in another state, *Rural Media Grp. v. Performance One Media*, 697 F.

Supp. 2d 1097, 1113 (D. Neb. 2010), it also argued that litigating the cases separately presented

ADM with a serious risk of inconsistent rulings, such as the possibility of different findings on

the central issue of whether ADM unlawfully manipulated ethanol prices. For all of those

reasons, allowing this case to proceed in Nebraska would unduly burden ADM.

## **CONCLUSION**

ADM respectfully urges this Court to transfer this case to the Central District of Illinois.
If this Court declines to transfer, ADM respectfully urges this Court to dismiss this case with
prejudice for the reasons stated in its motion to dismiss.


Dated: October 20, 2020                          Respectfully Submitted,

                                                 ARCHER DANIELS MIDLAND COMPANY

                                                 **s/ John P. Passarelli**
                                                 Bar Number: 16108
                                                 James M. Sulentic, #19610
                                                 Maggie L. Ebert, #24394
                                                 Attorneys for Defendant
                                                 KUTAK ROCK LLP
                                                 The Omaha Building
                                                 1650 Farnam Street
                                                 Omaha, NE 68102
                                                 Telephone: (402) 346-6000
                                                 Fax: (402) 346-1148
                                                 john.passarelli@kutakrock.com
                                                 james.sulentic@kutakrock.com
                                                 maggie.ebert@kutakrock.com

                                                 Stephen V. D'Amore
                                                 Scott P. Glauberman
                                                 Samantha M. Lerner
                                                 Reid F. Smith
                                                 WINSTON & STRAWN LLP
                                                 35 West Wacker Drive
                                                 Chicago, Illinois 60601
                                                 sdamore@winston.com
                                                 sglauberman@winston.com
                                                 slerner@winston.com
                                                 rfsmith@winston.com
                                                 T: (312) 558-5600
                                                 F: (312) 558-5700

                                                 *Counsel for Defendant*
                                                 *Archer Daniels Midland Company*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

Pursuant to Nebraska Civil Rule 7.1(d)(3), I hereby certify that the foregoing brief contains 3161 words, as measured by the word-count function of Microsoft Word 365 applied to include all text, including the caption, headings, footnotes, and quotations, and therefore complies with this Court's word limits for this brief pursuant to Nebraska Civil Rule 7.1(d).

**s/ John P. Passarelli**
Bar Number: 16108
James M. Sulentic, #19610
Maggie L. Ebert, #24394
Attorneys for Defendant
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Fax: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com
maggie.ebert@kutakrock.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2020, I electronically field the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to the following:

David A. Domina
DOMINA LAW GROUP PC LLO
2425 South 144th Street
Omaha, Nebraska 68144
Tel.: (402) 493-4100
ddomina@dominalaw.com

Greg G. Gutzler
DiCELLO LEVITT GUTZLER LLC
444 Madison Avenue, Fourth Floor
New York, New York 11022
Tel.: (646) 933-1000
ggutzler@dicellolevitt.com

Adam J. Levitt
John E. Tangren
Mark S. Hamill
DiCELLO LEVITT GUTZLER LLC
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
mhamill@dicellolevitt.com

s/ **John P. Passarelli**
Bar Number: 16108
James M. Sulentic, #19610
Maggie L. Ebert, #24394
Attorneys for Defendant
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102
Telephone: (402) 346-6000
Fax: (402) 346-1148
john.passarelli@kutakrock.com
james.sulentic@kutakrock.com
maggie.ebert@kutakrock.com